UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

DIRK P. HARVEY

        Plaintiff,

     v.                                **REPORT AND RECOMMENDATION**
                                             09-CV-00020 (TJM)

MICHAEL J. ASTRUE
COMMISSIONER OF SOCIAL SECURITY,

        Defendant,

## I.    Introduction

In May 1995, Plaintiff Dirk Harvey filed an application for Disability Insurance Benefits ("DIB") under the Social Security Act ("the Act"). Plaintiff alleges he has been unable to work since January 10, 1994, due to a back impairment and a learning disorder. The Commissioner of Social Security ("Commissioner") found Plaintiff was disabled. Plaintiff's disability status was later reviewed and found he had medically improved to the point he was no longer disabled as of April 1, 2001.

Plaintiff, through his attorney, Howard Olinsky, of the Olinsky, Shurtliff Law Firm, commenced this action on January 8, 2009, by filing a Complaint in the United States District Court for the Northern District of New York. (Docket No. 1). Plaintiff seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

On December 17, 2009, the Honorable Norman A. Mordue, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 14).

## II.     Background

The relevant procedural history may be summarized as follows: Plaintiff initially applied for DIB on May 31, 1995, alleging disability beginning on January 10, 1994 (R. at 42-44).[1] Plaintiff alleged disability due to a back impairment and a learning disorder. Plaintiff was awarded disability benefits (R. at 182-86). After a continuing disability review of Plaintiff's disability status, the Commissioner determined that he was no longer disabled as of April 1, 2001 (R. at 197-99). Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ") (R. at 200). A hearing was held in Syracuse, New York, on October 10, 2001, before ALJ Joachim Volhard (R. at 27-38). Plaintiff, represented by counsel, appeared and testified (R. at 31-37). On March 14, 2002, ALJ Volhard issued a decision finding Plaintiff no longer disabled as of April 1, 2001 (R. at 12-18). The Appeals Council denied Plaintiff's request for review (R. at 3-4). On October 18, 2002, Plaintiff filed a complaint in Federal Court (R. at 308). On January 24, 2006, District Court Judge Frederick Scullin, Jr., adopted Magistrate Judge George Lowe's recommendation to remand the case (R. at 307-33). The Appeals Council then vacated the final decision of the Commissioner and remanded the case to the ALJ (R. at 338).

A new hearing was held before Judge Joseph G. Medicis, Jr., on September 13, 2007, in Syracuse, New York (R. at 507-32). Plaintiff, represented by counsel, appeared and testified (R. at 510-32). ALJ Medicis, Jr., issued a decision on January 17, 2008, finding that Plaintiff was no longer disabled as of April 1, 2001 (R. at 295-305). The ALJ's decision became the Commissioner's final decision on December 12, 2008, when

---

[1] Citations to "R" refer to the Administrative Transcript. (Docket No. 6).

the Appeals Council denied Plaintiff's request for review (R. at 280-82).

Plaintiff, through counsel, timely commenced this action on January 8, 2009. (Docket No. 1). The Commissioner interposed an Answer on April 28, 2009. (Docket No. 7). Plaintiff filed a supporting Brief on June 17, 2009. (Docket No. 8). The Commissioner filed a Brief in opposition on September 2, 2009. (Docket No. 13).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[2]

For the reasons that follow, it is respectfully recommended that the Commissioner's motion be denied, Plaintiff's motion be granted, and that this case be remanded for further proceedings.

### III.    Discussion

#### A.    Legal Standard and Scope of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383 (c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct

---

[2] General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

The Regulations establish a sequential evaluation process[3] to determine whether an individual's disability had ceased or continued. This analysis asks:

---

[3] The Regulations establish an eight-step sequential evaluation for DIB, and a seven-step sequential evaluation for SSI. 20 C.F.R. §§ 404.1594(f)(1)-(8), 416.994(b)(5)(i)-(vii). The two sequential evaluations are identical with the exception that step one from the DIB analysis is eliminated in the SSI analysis. Id.

> (1) Are you engaging in substantial gainful activity? If you are . . . we will find disability to have ended . . . .
> (2) If you are not, do you have an impairment or combination of impairments which meets or equals the severity of an impairment listed in appendix 1 of this subpart? If you do, your disability will be found to continue.
> (3) If you do not, has there been medical improvement as defined in paragraph (b)(1) of this section? . . . .
> (4) If there has been medical improvement, we must determine whether it is related to your ability to do work in accordance with paragraphs (b)(1) through (4) of this section . . . .
> (5) If we found at step (3) that there has been no medical improvement or if we found at step (4) that the medical improvement is not related to your ability to work, we consider whether any of the exceptions in paragraphs (d) and (e) of this section apply. . . .
> (6) If medical improvement is shown to be related to your ability to do work or if one of the first group of exceptions to medical improvement applies, we will determine whether all your current impairments in combination are severe . . . .
> (7) If your impairment(s) is severe, . . . we will assess your residual functional capacity based on all your current impairments and consider whether you can still do work you have done in the past. If you can do such work, disability will be found to have ended.
> (8) If you are not able to do work you have done in the past, we will consider one final step. Given the residual functional capacity assessment and considering your age, education and past work experience, can you do other work? If you can, disability will be found to have ended. If you cannot, disability will be found to continue.

20 C.F.R. § 404.1594(f)(1)-(8).

For the reasons that follow, it is recommended that the matter be remanded for failure to weigh the various medical opinions of record.

**B.    Analysis**

**1.  The Commissioner's Decision**

The ALJ made the following findings with regard to factual information as well as the eight-step process set forth above: 1) the most recent favorable decision, known as the "comparison point decision," ("CPD") was made on March 6, 1996 (R. at 298); 2) at

the time of the CPD, Plaintiff was unable to perform even sedentary work due to his "discogenic low back pain" impairment, and therefore was found to be disabled, Id.; 3) Plaintiff had not engaged in substantial gainful activity as of April 1, 2001, the date he was found to be no longer disabled, Id.; 4) from the CPD through April 1, 2001, Plaintiff did not develop any new impairments, Id.; 5) Plaintiff has not had an impairment or combination of impairments that met or medically equaled the severity of a Listed impairment, since April 1, 2001 (R. at 301); 6) medical improvement was found to have occurred as of April 1, 2001. Id.; 7) as of April 1, 2001, Plaintiff retained "the residual functional capacity to perform the basic mental physical requirements of sedentary work, with lifting/carrying up to 10 pounds, and prolonged sitting as necessary, though somewhat restricted standing/walking, up to perhaps 2 hours or so in a routine 8-hour workday." Id.; 8) Plaintiff's medical improvement was found to be related to his ability to work because it resulted in an increase in his residual functional capacity (R. at 303); 9) as of April 1, 2001, Plaintiff's discogenic low back pain remained severe. Id.; 10) Plaintiff was unable to perform his past relevant work. Id.; 11) as of April 1, 2001, Plaintiff was a younger individual, with a high school education, and was able to communicate in English. Id.; and, 12) based on Medical-Vocational Rule 201.27,[4] there were a significant number of positions in the national economy that Plaintiff could perform (R. at 304). Ultimately, the ALJ found that Plaintiff's disability ended as of April 1, 2001 (R. at 305).

---

[4] Medical-Vocational Rule 201.27 directs a finding of not disabled for a younger individual, who was a high school graduate, with unskilled or no past work, and capable of performing sedentary work. 20 C.F.R. Pt. 404, Subpt. P, App 2, Rule 201.27.

### 2. Plaintiff's Claims:

Plaintiff argues that the ALJ's decision is neither supported by substantial evidence nor made in accordance with the applicable legal standards. Specifically, Plaintiff argues that a) the ALJ erred in applying the treating physician rule; b) the ALJ erred in failing to find Plaintiff had a severe mental impairment; c) the ALJ erred in evaluating Plaintiff's credibility; and d) the ALJ erred in relying upon the Medical-Vocational Guidelines in finding Plaintiff not disabled. The Court will discuss each argument in turn:

### a) The ALJ Erred in Failing to Evaluate Dr. Brett Greenky's Opinions

Plaintiff argues that the ALJ erred in failing to properly apply the treating physician rule and in failing to evaluate the opinions from Dr. Greenky, Plaintiff's treating orthopedist for his back impairments. Plaintiff's Brief, pp. 20-22.

Plaintiff began treatment with Dr. Greenky in April 1994, after injuring his back while at work in January 1994 (R. at 148). Plaintiff continued treatment with Dr. Greenky, albeit somewhat intermittently, throughout the remainder of the record. Dr. Greenky completed a questionnaire of Plaintiff's ability to work despite his impairments, on August 28, 2007 (R. at 473-477). Dr. Greenky opined that Plaintiff could sit for about four hours in an eight-hour workday, and stand/walk for about two hours in an eight-hour workday (R. at 474). He further indicated that Plaintiff could sit for forty-five minutes before needing to stand and could stand for forty-five minutes before needing to sit down or walk around (R. at 474-75). He stated that Plaintiff could frequently lift

less than ten pounds, and occasionally lift up to twenty pounds (R. at 475). Dr. Greenky opined that Plaintiff could only occasionally look up or hold his head in a static position (R. at 476). He indicated that Plaintiff could rarely twist, crouch/squat, climb ladders, and climb stairs, but could never stoop or bend. Id. Dr. Greenky also stated that Plaintiff experienced the following psychological conditions: depression, somatoform disorder,[5] and anxiety (R. at 474). Finally, Dr. Greenky opined that Plaintiff's limitations existed as of January 10, 1994 (R. at 477).

According to the "treating physician's rule,"[6] the ALJ must give controlling weight to the treating physician's opinion when that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); see also Green-Younger v. Barnhart, 335 F.3d 99, 105 (2d Cir. 2003); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000). "Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is ground for remand." Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) (citing Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998)).

Here, the ALJ failed to evaluate, or even mention, Dr. Greenky's August 2007 opinion, contrary to the directions of the Appeals Council.[7] Indeed, the ALJ's discussion

---

[5] "[A] group of disorders in which physical symptoms suggesting physical disorders for which there are no demonstrable organic findings or known physiologic mechanisms, and for which there is positive evidence, or a strong presumption that the symptoms are linked to psychological factors; *e.g.,* hysteria, conversion disorder, hypochondriasis, pain disorder, somatization disorder, body dysmorphic disorder, and Briquet syndrome." Stedmans Medical Dictionary (27th ed. 2000), *available at* STEDMANS 116700 (Westlaw).

[6] "The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

[7] When a Federal Court remands a case to the Appeals Council, the Council can either prepare a decision or remand to an ALJ. 20 C.F.R. § 404.983. If, as was the case here, the Appeals Council opts to remand, the ALJ "shall take any action that [wa]s ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order." 20 C.F.R. §

of Dr. Greenky's lengthy treatment history with Plaintiff consisted entirely of mentioning a few treatment notes in 2001 (R. at 299). The ALJ's complete failure to evaluate Dr. Greenky's opinions amounts to error worthy of remand. See 20 C.F.R. § 404.1527(d) ("Regardless of its source, we will evaluate every medical opinion we receive."); Social Security Ruling 96-2p, 1996 WL 374188 at *5 (S.S.A.) ("[T]he notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, . . .and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."); see also Rodriguez v. Astrue, 2009 WL 637154, at *27 (S.D.N.Y. Mar. 9, 2009) (finding error where the ALJ simply stated he was not granting Plaintiff's treating physicians controlling weight).

The Court acknowledges that Dr. Greenky's August 2007 opinion was completed several years after April 2001, when Plaintiff was found no longer disabled. However, an opinion from a treating physician may not be dismissed simply because it is retrospective. Dousewicz v. Harris, 646 F.2d 771, 774 (2d Cir. 1981). Unless a treating physician's retrospective opinion is contradicted by other medical evidence or "overwhelmingly compelling" non-medical evidence, it is entitled to controlling weight.

---

404.977(b). The ALJ noted that "[p]ursuant to the District Court remand order, the Appeals Council has directed the undersigned to re-evaluate the RFC (residual functional capacity) for this individual, especially in light of the issue that it appears that possibility of mental impairment(s) was not considered adequately in the previous hearing decision" (R. at 296). This suggests the ALJ may have believed that, on orders from the Appeals Council, his decision was limited to considering Plaintiff's alleged mental impairments, and that Plaintiff's ability to perform the physical demands of sedentary work had already been established. However, the Appeals Council "vacate[d] the final decision the Commissioner . . . and remand[ed] this case to an [ALJ] for further proceedings consistent with the order of the court" (R. at 338). The ALJ was then instructed to "offer the claimant the opportunity for a hearing, take any further action needed to complete the administrative record and issue a new decision." Id. Thus, it is clear to this Court that the Appeals Council was not attempting to limit the scope of the ALJ's findings merely to Plaintiff's alleged mental impairments.

Rivera v. Sullivan, 923 F.2d 964, 968-69 (2d Cir. 1991); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 862 (2d Cir. 1990). Plaintiff's situation can be likened to that of an individual who must be found disabled before a prior date in order to be eligible for DIB. In those circumstances, the Second Circuit has made it clear that

> '[E]vidence bearing upon an applicant's condition subsequent to the date upon which the earning requirement [ i.e., insured status] was last met is pertinent evidence in that it may disclose the severity and continuity of impairments existing before the earning requirement date or may identify additional impairments which could reasonably be presumed to have been present and to have imposed limitations as of the earning requirement date.'

Lisa v. Sec'y of Dep't of Health & Human Servs., 940 F.2d 40, 44 (2d Cir. 1991) (citing Gold v. Secretary of Health, Educ. and Welfare, 463 F.2d 38, 41-42 (2d Cir.1972) (quoting Carnevale v. Gardner, 393 F.2d 889, 890 (2d Cir.1968)); see also Eiden v. Secretary of Health, Educ. & Welfare, 616 F.2d 63, 65 (2d Cir.1980)). Thus, despite being completed several years after April 2001, Dr. Greenky's opinions are certainly relevant in evaluating Plaintiff's back impairments and disability status.

The Court further notes that, along with failing to weigh Dr. Greenky's opinion, the ALJ erroneously failed to weigh any medical opinion of record. See 20 C.F.R. § 404.1527(d) ("Regardless of its source, we will evaluate every medical opinion we receive."). Therefore, the Court recommends remand to allow the ALJ an opportunity to properly evaluate Dr. Greenky's opinion, as well as every medical opinion relevant to his decision, in accordance with the Regulations. See 20 C.F.R. § 404.1527(d)(1)-(6) (setting forth the factors ALJs should consider in evaluating medical opinions).

### b) On Remand the ALJ Should Incorporate the Special Technique into the Decision

Plaintiff argues that the ALJ erred in failing to find his learning disorder to be a severe impairment. Plaintiff's Brief, pp. 19-20.

The Court finds that the ALJ's discussion of Plaintiff's mental impairments to be inadequate to enable proper review. See Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984) (requiring the Commissioner to set forth the crucial factors in [his] determination . . . with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence."). The ALJ's sole discussion of Plaintiff's mental impairments consisted of simply reciting the October 26, 2007 findings from SSA consultative psychologist, Dr. Jeanne Shapiro (R. at 300). The ALJ noted that the Dr. Shapiro's examination was necessary because "the record show[ed] . . . that prior to this remand proceeding there was nothing substantial in the way of medical documentation, particularly in regard to the claimant's mention during his application process of some sort of learning disorder (or reading problem) (R. at 300). However, contrary to the ALJ's assertion, the record does indeed contain medical evidence of a learning disorder and resulting limitations. For example, Plaintiff underwent psychological and intelligence testing with psychologist, Dr. Thomas Lazzaro, on July 14, 1995 (R. at 156-57). Dr. Lazzaro found that Plaintiff had a verbal IQ score of 79, a performance IQ score of 87, and a full scale IQ score of 80, which indicated he "function[ed] overall intellectually in the low end of the Low Average range" (R. at 157). Dr. Lazzaro noted that Plaintiff's IQ scores "appear[ed] to reflect the impact on his cognition of organically-based attending [sic] and concentration deficits that engender his learning disability." Id. He further found that Plaintiff achieved a grade equivalent of 3.3 in Reading and 7.5 in Arithmetic. Id. These scores "reflect[ed] his Dyslexia." Id. On

August 25, 1995, Dr. Abdul Hameed, an SSA non-examining physician, reviewed Plaintiff's file and found that he "often" experienced deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner (R. at 71). Thus, the record contains evidence of a learning disorder, as well as limitations in concentration.

Furthermore, the ALJ failed to incorporate the required "special technique" analysis into his decision. The Regulations make it clear that when an impairment is mental, the ALJ must incorporate a special technique in his written decision to determine whether that mental impairments rises to the level of severe. 20 C.F.R. § 404.1520a(a). The special technique encompasses four areas: "Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation."  20 C.F.R. § 404.1520a(c)(3). These areas are rated on a scale of "none, mild, moderate, marked, and extreme." 20 C.F.R. § 404.1520a(c). If an individual's impairment results in none or mild for the first three categories and none in the fourth, a finding of non-severe is generally appropriate. 20 C.F.R. § 404.1520a(d)(1). The ALJ's failure to adhere to the Regulations by incorporating the special technique analysis into his written decision frustrates the Court's ability to properly review his findings. See Kohler v. Astrue, 546 F.3d 260, 267-68 (2d Cir. 2008) (noting that "[e]ffective review . . . [wa]s frustrated," in part "because the [ALJ's] decision contain[ed] no specific findings regarding [the claimant's] degree of limitation in the four functional areas").

Therefore, on remand, the ALJ should incorporate the special technique into his written decision in analyzing Plaintiff's mental impairments. Furthermore, the ALJ should

consider all evidence relating to Plaintiff's mental impairments, and not simply recite the findings from one psychologist.

### c) The ALJ Must Necessarily Reevaluate Plaintiff's Credibility

Plaintiff argues that the ALJ erred in evaluating his credibility. Plaintiff's Brief, pp. 22-23.

"[A] claimant's subjective evidence of pain is entitled to great weight where . . . it is supported by objective medical evidence." Simmons v. U.S. R.R. Retirement Bd., 982 F.2d 49, 56 (2d Cir. 1992) (citations omitted). "However, the ALJ is 'not obliged to accept without question the credibility of such subjective evidence.'" Martone v. Apfel, 70 F.Supp.2d 145, 151 (N.D.N.Y. 1999) (quoting Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979)). In analyzing credibility, the ALJ must first determine whether the claimant has medically determinable impairments, "which could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. § 404.1529(a); S Social Security Ruling 96-7p, 1996 WL 374186, at *2 (S.S.A.) [hereinafter SSR 96-7p]. Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work. S.S.R. 96-7p, 1996 WL 374186, at *2; 20 C.F.R. § 404.1529(c). Because "an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone," S.S.R. 96-7p, 1996 WL 374186, at *3, an ALJ will consider the factors listed in the regulations.[8] 20 C.F.R. §§ 416.929(c)(3)(i)-(vii).

---

[8] The listed factors are: (i) claimant's daily activities; (ii) location, duration, frequency, and intensity of claimant's symptoms; (iii) precipitating and aggravating factors; (iv) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (v) other treatment received to relieve symptoms;

If the ALJ finds Plaintiff's pain contentions are not credible, he must state his reasons "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." Young v. Astrue, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting Brandon v. Bowen, 666 F.Supp 604, 608 (S.D.N.Y. 1987)).

The ALJ found that Plaintiff's "medically determinable impairment could reasonably be expected to produce only some of the alleged symptoms, but that [his] statements concerning the intensity, persistence and limiting effects of these symptoms [we]re not entirely credible" (R. at 303). However, the ALJ failed to engage in any meaningful analysis of the factors. Therefore, on remand, the ALJ must consider the relevant factors in determining Plaintiff's credibility.

### d) The ALJ's Step Five Findings Are Necessarily Flawed

Plaintiff's final argument is that the ALJ erred in relying upon the Medical-Vocational Guidelines in finding Plaintiff not disabled without obtaining evidence from a vocational expert. Plaintiff's Brief, pp. 23-25.

The Court has recommended remand for failure to properly Dr. Greenky's opinions. Therefore, the ALJ's findings at step five of the sequential evaluation are, in any event, necessarily flawed.

## IV.   Remand

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the

---

(vi) any measures taken by the claimant to relieve symptoms; and (vii) any other factors concerning claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. §§ 416.929(c)(3)(i)-(vii).

case for a rehearing.'" Butts v. Barnhart, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)).  Remand is "appropriate where, due to inconsistencies in the medical evidence and/or significant gaps in the record, further findings would . . . plainly help to assure the proper disposition of [a] claim." Kirkland v. Astrue, 2008 WL 267429, at *8 (E.D.N.Y. Jan. 29, 2008).

Here, although evidence the ALJ must reconsider, such as the opinion of Dr. Greenky, support Plaintiff's claim, they do not conclusively establish that Plaintiff is disabled. See Heath v. Astrue, 2008 WL 1850649, at *1 (E.D.N.Y. Apr. 24, 2008) (citing 20 C.F.R. § 404.1527(e)(2); Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999)). Moreover, remanding for calculation of benefits is improper in this case because the ALJ must apply the proper legal standards including, the special technique and the Regulations for weighing medical opinions. See Butts, 388 F.3d at 385-86.

Nonetheless, Plaintiff's case has already been remanded once by the District Court. Therefore, this Court recommends the Commissioner be directed to complete further administrative proceedings within 60 days of the issuance of this order, and if upon remand, the ALJ denies Plaintiff's claim, the Commissioner be directed to issue a final decision within 60 days of any appeal. "If these deadlines are not observed, a calculation of benefits owed [Plaintiff] must be made immediately," Butts, 388 F.3d at 387, unless Plaintiff is the cause of the delay in meeting those deadlines. Heath, 2008 WL 1850649, at *2.

## V.  Conclusion

For the foregoing reasons, the Court finds that a remand is necessary and warranted. Accordingly, it is respectfully recommended that the Commissioner's

decision denying disability benefits be REMANDED for further proceedings in accordance with this recommendation and pursuant to sentence four of 42 U.S.C. Section 405(g).

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

DATED:    Syracuse, New York
          September 7, 2010

## ORDER

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**<u>Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.</u>** *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985);   *Small v.*

*Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989);   *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir.1988).

    Let the Clerk send a copy of this Report and recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.

Victor E. Bianchini
United States Magistrate Judge


DATED:    Syracuse, New York
September 7, 2010